STATE of Missouri, Respondent,

v.

Nicole GENTRY, Appellant.

No. 79045.

Supreme Court of Missouri,
En Banc.

Dec. 17, 1996.

Rehearing Denied Jan. 21, 1997.

Pattie Shostak, Asst. Public Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Claire C. McCaskill, Prosecuting Attorney, C.J. Rieg, Assistant Prosecuting Attorney, Jackson County, Kansas City, for respondent.

ROBERTSON, Judge.

A jury convicted Nicole Gentry of violating the terms of a full order of protection, a class A misdemeanor. § 455.085.8, RSMo 1994. Section 455.040.2, RSMo 1994, requires a court issuing a full order of protection to serve the respondent with a copy of the full order of protection. Section 455.085.8 provides that notice is sufficient if a law enforcement officer "responding to a call of a reported incident of ... violation of an order of protection" presents "a copy of the order of protection to the respondent." No one served Ms. Gentry with a copy of the full order of protection prior to her arrest for violating that order. The law enforcement officer who arrested Ms. Gentry presented a copy of the full order of protection to Ms. Gentry at the time of her arrest, after she committed the act that formed the basis of her conviction. Does due process [1] require that Ms. Gentry receive notice of the existence of the full order of protection before she may be arrested for violating that order? Under the facts of this case, we answer affirmatively, reverse the judgment of the trial court, and enter a judgment of acquittal. Rule 84.14.

I.

Nicole Gentry and Keith Fletcher lived together without benefit of matrimony at

1. U.S. Const. amend XIV; Mo. Const. art. 1, § 10.

3937 Bellefontaine in Kansas City, Missouri. The couple celebrated Valentine's Day, 1994, by obtaining *ex parte* orders of protection against each other from the Circuit Court of Jackson County following an altercation the previous night that required Ms. Gentry to seek medical attention at a local hospital. On February 27, 1994, a Kansas City, Missouri, police officer responded to a call reporting a disturbance at 3937 Bellefontaine, found Ms. Gentry there, and served her with a copy of the *ex parte* order of protection Mr. Fletcher had obtained on February 14. The *ex parte* order barred Ms. Gentry from entering "the premises of the dwelling unit of the petitioner [Mr. Fletcher] located at 3937 Bellefontaine." The *ex parte* order plainly showed a March 10, 1994, date for the full hearing on its face, and the police officer made sure Ms. Gentry knew of the court date for the full-order hearing.

Violence often visited the Fletcher–Gentry home. Ms. Gentry testified that Mr. Fletcher frequently struck her, would apologize, beg forgiveness, and promise anew never, never to strike her again. She would accept the apology and agree—in her words—to "give him another chance." The record does not tell us whether Ms. Gentry returned Mr. Fletcher's acts of abuse. But the record does tell us unequivocally that experience found Ms. Gentry a dismal student; she consistently believed what Mr. Fletcher told her despite abundant evidence to the contrary.

Sometime after February 27 but before March 10, the uncontroverted evidence also showed that Ms. Gentry and Mr. Fletcher had a conversation during which Ms. Gentry believed that she and Mr. Fletcher agreed not to pursue full orders of protection against each other. This testimony and Ms. Gentry's failure to appear in court as a result of Mr. Fletcher's promises were consistent with the course of the relationship Ms. Gentry described.

It is also uncontroverted that Ms. Gentry did not appear in court on March 10 for the hearing on the full order of protection sought by Mr. Fletcher and that the court entered a full order of protection prohibiting Ms. Gentry from entering the premises of Mr. Fletcher's dwelling unit at 3937 Bellefontaine. On March 11, Ms. Gentry went to 3937 Bellefontaine ostensibly to pick up her mail. Mr. Fletcher refused to answer the door when she knocked, calling the police instead. When the police arrived, they found Ms. Gentry walking away from the residence with a female friend. An officer obtained a copy of the full order of protection from Mr. Fletcher, explained the order to Ms. Gentry and offered to let her read it. She declined. Ms. Gentry did not know of the existence of the full order of protection until the officer showed it to her. The officer arrested Ms. Gentry for violating the terms and conditions of the full order of protection.

The state charged Ms. Gentry with "[a] violation of the terms and conditions, with regard to ... entrance upon the premises of [Mr. Fletcher's] dwelling unit, of a full order of protection ... a class A misdemeanor."[2] A jury convicted Ms. Gentry of violating the full order of protection. Following the jury's recommendation, the trial court sentenced her to time served, approximately fourteen days. Ms. Gentry appealed, claiming that she had no notice that a full order of protection existed and that her conviction violated due process. The Court of Appeals, Western District, held that Ms. Gentry had actual notice of the terms and conditions of the full order of protection because she had actual knowledge of the date of the hearing on the full order of protection and affirmed the conviction. We granted transfer because of the importance of the notice issue and have jurisdiction.[3] We reverse the judgment of the trial court and order the appellant discharged.

## II.

The dispositive issue is whether due process requires that Ms. Gentry receive notice

---

**2.** § 455.085.8.

**3.** Mo. Const. art. V, § 10.

of the existence of the full order of protection prior to her arrest for violating that order. This is a legal question, not a factual one. Our review of this question is, therefore, *de novo.*

■ Due process requires that statutes creating crimes speak with sufficient clarity to prevent arbitrary and discriminatory enforcement by the government and to permit a person of ordinary intelligence to understand the conduct the statute prohibits.[4] The conduct section 455.085.8 defines as criminal becomes criminal only if a judicial event occurs—a court enters a full order of protection—over which the defendant has no control and about which she may have no knowledge. While section 455.040.2[5] makes service informing defendant of the existence of the *ex parte* order and of the court's decision to enter a full order of protection mandatory, "[f]ailure to do so shall not affect the validity of a full order of protection."[6]

■ On its face, section 455.085.8 does not offend the due process clause. This is because a section 455.085.8 conviction assumes a fact: that the person charged with its violation has notice that a court has entered an order prohibiting the specific conduct the person has committed.[7] The requirement of notice comes from three statutory sources.

First, section 455.040.2 requires the court to "cause a copy of any full order of protection to be served upon the respondent." Second,

> [w]hen a law enforcement officer has probable cause to believe that a party, against whom a protective order has been entered and has notice of such order entered, has committed an act of abuse in violation of such order, the officer shall arrest the offending party-respondent whether or not the violation occurred in the presence of the arresting officer.[8]

And third,

> A violation of the terms and conditions, with regard to ... entrance upon the premises of the petitioner's dwelling unit, of a full order of protection shall be a class A misdemeanor.... For purposes of this subsection, in addition to the notice provided by actual service of the order, *a party is deemed to have notice of an order of protection if the law enforcement officer responding to a call of a reported incident of abuse or violation of an order of protection presented a copy of the order of protection to respondent.*[9]

■ In this case, the prosecutor charged Ms. Gentry with violating the terms and conditions of a full order of protection.[10] The uncontroverted evidence showed that the

---

4. *State v. Allen,* 905 S.W.2d 874, 877 (Mo. banc 1995), *citing Papachristou v. City of Jacksonville,* 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972).

5. RSMo 1994.

6. § 455.040.2.

7. See MAI–CR3rd 332.52

(As to Count ____, if) (If) you find and believe from the evidence beyond a reasonable doubt:
First, that (on) (on or about) [*date*], the Circuit Court of _____ County entered an order prohibiting defendant from [*Insert appropriate portion of order that pertains to abuse, child custody, or entrance upon victim's dwelling unit; such as "entering the premises at 1251 Sunset, Booneville, Missouri."*], and
Second, that on [*date*], [*Insert name of law enforcement officer or process server,*] presented a copy of that order to the defendant, and
Third, that (on) (on or about) [*date*], in the County of _____, State of Missouri, the defen-

dant violated that order by [*Describe conduct which constitutes violation.*], then you will find the defendant guilty of violation of order of protection.
However, unless you find and believe from the evidence beyond a reasonable doubt each and all of the propositions, you must find the defendant not guilty of that offense.
If you do find the defendant guilty of violation of order of protection, you will assess and declare one of the following punishments: [*Insert range of punishment as directed in MAI–CR3rd 304.02.*]

8. § 455.080.2, RSMo 1996.

9. (Emphasis added.) § 455.085.8, RSMo 1994.

10. Section 455.035, RSMo 1994, provides that "[a]n *ex parte* order of protection shall be in effect until the time of the hearing [on the full order of protection]." We assume that the prosecutor's decision to charge Ms. Gentry with a violation of section 455.080.8 (full order) rather

only notice Ms. Gentry received of the existence of the full order of protection was given by the arresting officer *after* Ms. Gentry left 3937 Bellefontaine on March 11, 1994. Prior to her arrest she believed that Mr. Fletcher planned not to pursue the full order of protection and, therefore, that no such order existed.

Was the arresting officer's after-the-fact notice of the full order of protection sufficient to meet the demands of the due process clause? No. For purposes of due process as it applies to the crime defined in section 455.085.8, notice is sufficient only if it arrives before the fact, when knowledge of the acts the statute forbids can, if heeded, permit a person to conform her conduct to the demands of the law.

We caution against reading this case too broadly. It is fact specific. We believe that there will be criminal convictions under section 455.085.8 about which a reviewing court may properly conclude that a defendant had actual notice of the full order of protection even though the defendant did not have legal notice and that actual notice was sufficient to meet the requirements of due process. Because Ms. Gentry had neither actual nor legal notice of the existence of the full order of protection, we conclude that due process demands that her conviction be set aside.

### III.

The judgment of the trial court is reversed and pursuant to Rule 84.14 this Court enters a judgment of acquittal.

All concur.

than section 455.085.7 (violating the terms and conditions of an *ex parte* order) resulted from the expiration of the *ex parte* order on March 10, 1994, the date of the hearing on the full order of protection.