STATE of Missouri, Plaintiff–
Respondent,

v.

Michael C. COURTNEY, Jr.,
Defendant–Appellant.

No. 28669.

Missouri Court of Appeals,
Southern District,
Division Two.

July 28, 2008.

Irene Karns, Columbia, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen. and Cory Lee Atkins, Assistant Attorney General, Jefferson City, MO, for respondent.

GARY W. LYNCH, Chief Judge.

Michael C. Courtney, Jr. ("Defendant") was charged with, tried by a jury for, and convicted of forcible rape in violation of section 566.030.[1] He appeals claiming, among other things, that the trial court erroneously overruled his hearsay objection to testimony related to a cell phone call, which prejudiced him. We agree, reverse the judgment of conviction, and remand for a new trial.

### Factual Background

It is undisputed that Defendant and Complainant[2] spent several hours together in Complainant's bedroom in her apartment during the early morning of January 13, 2005. Likewise, both testified that Complainant programmed into her cell phone Defendant's telephone number, as he recited it to her, and that during the time they were together they had sexual intercourse. However, Complainant testified Defendant forcibly compelled intercourse, and Defendant testified it was consensual.

During trial, Complainant testified that Defendant stole her cell phone when he left her apartment that morning around 6:30 a.m. Defendant testified that he did not take Complainant's cell phone. The State called as its last witness, Sergeant Michael James Larery of the Webb City

---

1. All references to statutes are to RSMo 2000, unless otherwise indicated.

2. We employ this terminology to comply with the requirements of section 566.226, RSMo Cum.Supp.2007. No disrespect is intended.

Police Department, who was one of the law enforcement officers who investigated the case. The part of his direct examination challenged by Defendant on this appeal[3] as being hearsay is included in the following:

[Prosecutor]: During the course of your investigation did you find out that a cell phone may have been taken during the incident?

[Witness]: Yes, Ma'am, I did.

[Prosecutor]: What—what did you do to attempt to locate that cell phone?

[Witness]: I had the cell phone records dumped off the phone. [Complainant] provided me with a list—cell phone records from her company, it showed a phone call was made to a 620 area code, which I'm from Kansas, I knew that was a Kansas number so I called the number.

[Prosecutor]: Who answered?

[Witness]: Mrs. Butcher.

[Prosecutor]: And do you know how Mrs. Butcher is related to the Defendant?

[Witness]: She is the husband to his cousin—or the wife to his cousin, Chris Butcher.

[Prosecutor]: Did the records—did the records indicate what time that call was placed?

[Witness]: 8:47 a.m.

[Prosecutor]: Do you know approximately—what—on what day?

[Witness]: It was on the 13th, the morning of the 13th.

[Prosecutor]: So the same day the rape occurred?

[Witness]: Yes, Ma'am.

The jury found Defendant guilty of forcible rape, and the trial court sentenced him to twenty years' imprisonment. This appeal timely followed.

### Standard of Review

A trial court has broad discretion to admit or exclude evidence at trial. This standard of review compels the reversal of a trial court's ruling on the admission of evidence only if the court has clearly abused its discretion. That discretion is abused when a ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration. Additionally, on direct appeal, this Court reviews the trial court for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial. Trial court error is not prejudicial unless there is a reasonable probability that the trial court's error affected the outcome of the trial. *State v. Forrest*, 183 S.W.3d 218, 223–24 (Mo. banc 2006) (internal citations and quotations omitted).

### Discussion

 " 'A hearsay statement is any out-of-court statement that is used to prove the truth of the matter asserted and that depends on the veracity of the statement for its value.' " *Id.* at 224 (quoting *Smulls v. State*, 71 S.W.3d 138, 148 (Mo. banc 2002)). In his second of three points, Defendant contends that the statements made by Sergeant Larery about the call made from Complainant's cell phone to Defendant's cousin's home at 8:47 a.m. on January 13, 2005, are hearsay, "because his testimony was based on inadmissible hearsay, a report . . . that was not admit-

---

**3.** Defendant's hearsay objection to this testimony was properly preserved for appellate review. *See State v. Lucio*, 247 S.W.3d 131,

134 (Mo.App.2008). The State does not argue otherwise.

ted into evidence." In support, Defendant cites us to *State v. Jaynes*, 949 S.W.2d 633 (Mo.App.1997), where testimony relaying the contents of a letter written by another was held to be hearsay; and *State v. Robinson*, 588 S.W.2d 247 (Mo.App.1979), where testimony relating information from accounting records prepared by others was held to be hearsay.

The State does not attempt to distinguish either *Jaynes* or *Robinson*, but counters that "[t]he trial court did not abuse its discretion in allowing Detective Larery to describe [Complainant's] cell phone records because cell phone records are not hearsay." To support its position, the State cites *State v. Dunn*, 7 S.W.3d 427, 431–32 (Mo.App.1999), which held that a computer-generated report of computer-recorded data documenting a phone call from a particular phone, if properly authenticated as being reliable, is not hearsay because it is not the statement of a human declarant. As conceded by the State, however, the case at bar is readily distinguishable from *Dunn* in that here the actual telephone company record was not offered into evidence, as it was in *Dunn*. Rather, Sergeant Larery testified from the contents of a paper that he was told was the telephone company's record of call activity on Complainant's phone. The State argues, nevertheless, that this testimony is not hearsay because the phone records were properly authenticated by Sergeant Larery's testimony as to their reliability, as required by *Dunn*. As asserted in the State's brief: "The challenged evidence was proven reliable in this case because [Sergeant] Larery's testimony established that [Complainant] received the phone records from her phone company and then gave the paper records to [Sergeant] Larery.... [Sergeant] Larery testified that he had actual possession of the record itself." This argument is flawed in two respects.

First, according to Sergeant Larery's testimony, he explicitly relied upon Complainant's out-of-court statement to him that the papers she gave him were her telephone company's records of the call activity on her cell phone. Second, implicit in his testimony is the assumption that the paper records may have contained some printed statements, aside from the call activity, which indicated their origin and authenticity. Of course, because the paper records were not admitted into evidence, any such statements printed on the papers would likewise be out-of-court statements. Thus, in either case, Sergeant Larery's testimony depended upon the veracity of an out-of-court statement to prove that the papers from which he recited the telephone call information were, in truth, the telephone company's computer-generated records of call activity on Complainant's cell phone. As such, both are clearly hearsay statements and are inadmissible. *Forrest*, 183 S.W.3d at 224; *Jaynes*, 949 S.W.2d at 636; *Robinson*, 588 S.W.2d at 248.

■ Our inquiry now turns to whether the trial court error in admitting these hearsay statements was so prejudicial that it deprived Defendant of a fair trial. *See Forrest*, 183 S.W.3d at 223–24; *State v. Robinson*, 196 S.W.3d 567, 573 (Mo.App. 2006).

Defendant was not deprived of a fair trial unless the hearsay evidence that was admitted is outcome determinative. *State v. Robinson*, 111 S.W.3d 510, 514 (Mo.App.2003). Erroneously admitted evidence is outcome determinative if it so influenced the jury that when considered with all the admissible evidence in the entire record, "there is a reasonable probability that the jury would have reached a different conclusion but for the erroneously admitted evidence."

*State v. Roberts,* 948 S.W.2d 577, 592 (Mo. banc 1997), *cert. denied,* 522 U.S. 1056, 118 S.Ct. 711, 139 L.Ed.2d 652 (1998).

*Robinson,* 196 S.W.3d at 573.

Defendant contends that he was so prejudiced because the cell phone call "was offered to prove that [he] stole the phone from [Complainant], supporting the State's argument that he did so to keep her from calling for help." The State argued to the jury during closing argument that the cell phone records proved that Defendant stole Complainant's cell phone, because the call at 8:47 a.m. was made while Complainant was being driven to the hospital by Officer Gary Koening and could not have made the call, and that its theft by Defendant was a conscious act of guilt. This argument was the culmination of testimony elicited by the State from Complainant, Officer Koening, Sergeant Larery, and Defendant—four of the six witnesses at trial—concerning the cell phone, its alleged theft, and the call made from that phone at 8:47 a.m. on January 13, 2005. The theft of the cell phone was a common theme of the State's case to which it returned and emphasized on many occasions throughout the trial.

In addition, the erroneous admission of the cell phone records not only supported the consciousness-of-guilt argument by the State, but also provided a foundation for the State to challenge Defendant's credibility. The credibility as between Complainant and Defendant was the critical question for the jury to resolve in determining guilt. There is a reasonable probability that the jury could have easily concluded that if Defendant lied about stealing the cell phone, because such testimony was contrary to the apparent telephone company cell phone records, he also lied about his version of the events surrounding the sexual intercourse. This is understandable, given that Sergeant Larery's testimony concerning the cell phone records gave the appearance of offering the jury objective, third-party evidence when almost all of the other evidence in the trial depended almost exclusively upon the credibility of Complainant versus the credibility of Defendant.

For instance, Complainant testified that she was physically injured and bruised by Defendant when he forcibly compelled her to have intercourse. Defendant testified that he did not injure Complainant in any way at any time while he was with her and argued that any injuries she sustained must have been the result of the altercation between Complainant and her roommate and roommate's boyfriend. Complainant admitted that this altercation occurred after Defendant had left the apartment that morning but before Complainant contacted law enforcement. Another collision of credibility occurred when Complainant testified that she bit Defendant twice on the upper body during the time he forcibly compelled her to have intercourse. Defendant testified that the bite marks on his upper body were from his two-year-old son and that the reason Complainant was aware of them was because he told her about them while they were together that morning.

In this case, where there was a paucity of either objective or third-party evidence to directly support either Complainant's version of events or Defendant's version of events, we find that the erroneous admission of the call activity information from the purported cell phone records was outcome determinative. *Id.; Jaynes,* 949 S.W.2d at 636; *Robinson,* 588 S.W.2d at 248. This is so because there is a reasonable probability that the jury believed that the cell phone call activity information was supported by the objective records of the telephone company, an independent third

party, when in actuality it was only supported by Complainant's out-of-court statement which, like all of Complainant's other testimony, was subject to their credibility determination. As such, "'there is a reasonable probability that the jury would have reached a different conclusion but for the erroneously admitted evidence.'" *Robinson*, 196 S.W.3d at 573 (quoting *State v. Roberts*, 948 S.W.2d 577, 592 (Mo. banc 1997), *cert. denied*, 522 U.S. 1056, 118 S.Ct. 711, 139 L.Ed.2d 652 (1998)). Defendant's second point is granted.[4]

### Decision

The judgment of conviction is reversed, and the case is remanded for a new trial.

BARNEY, P.J., and RAHMEYER, J., concur.

---

4. Because the issues raised by Defendant in his first and third points will not arise on retrial, they are moot and need not be addressed.